**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 10 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SYED HUSAIN, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> CAMPBELL SOUP COMPANY, <br><br> Defendant - Appellee. | No. 24-6041 <br><br> D.C. No. 3:24-cv-01776-CRB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted November 21, 2025
San Francisco, California

Before: S.R. THOMAS, BRESS, and MENDOZA, Circuit Judges.
Dissent by Judge MENDOZA.

Syed Husain appeals from the district court's Rule 12(b)(6) dismissal of his putative class action suit alleging that Kettle Brand "Air Fried" chips are deceptively labeled as air fried when they are, in fact, deep fried in oil. We review the dismissal of a case under Rule 12(b)(6) de novo. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021). Dismissal under Rule 12(b)(6) "is appropriate when the complaint

---

*\** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

fails to state sufficient facts creating a plausible claim to relief." *Id.* "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Under California law, deceptive advertising claims are governed by the "reasonable consumer" test, which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Moore*, 4 F.4th at 882 (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  To determine whether a product label plausibly deceives, we first look at the challenged product's front label. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023).  If the front label is ambiguous, "the ambiguity can be resolved by reference to the back label." *Id.* at 1099.

Here, Husain fails to plausibly allege that a reasonable consumer would be deceived into believing that the chips are not deep fried in oil.  The front of the packaging prominently states that the chips are not just "Air Fried," but also "Kettle Cooked Air Finished."  The front label therefore expressly describes a two-step process that involves both kettle cooking and air frying.  The suggestion that the

chips are exclusively air fried is belied by the plain language of the front of the packaging. And we agree with the district court that reasonable consumers would understand "kettle cooked" to refer to the commonly understood method of deep frying potato chips in oil. Husain's contention that "kettle cooked" could refer to potato chips being cooked in water or steam is not plausible. *See Moore*, 4 F.4th at 882 ("[A] plaintiff's unreasonable assumptions about a product's label will not suffice."); *Dr. Pepper*, 945 F.3d at 1230 ("Just because some consumers may unreasonably interpret [a] term differently does not render [it] . . . false or deceptive."). The front label nowhere suggests that the chips are cooked without oil or are exclusively air-fried. Indeed, a front-label burst indicates that these chips have "30% less fat than regular Kettle Brand" chips, and a reasonable consumer would understand that the remaining fat content cannot come from potatoes alone, without a significant amount of oil.

But even if the front label is ambiguous, the rest of the packaging cures any ambiguity. *See McGinity*, 69 F.4th at 1098 ("[T]he front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label."). The ingredients list on the back panel lists "vegetable oils (canola, sunflower and/or safflower)" as the second ingredient. The back of the packaging likewise confirms the two-step cooking process, stating that "We batch cook them in kettles, then air fry them for a light and

crispy crunch!" And there is also a pictorial depiction of potato slices being dropped into a vat of boiling liquid that a reasonable consumer would understand to be oil, especially given the visible droplets bubbling out of the pot. Given this context, no reasonable consumer unsure of the meaning of the front label would be deceived into thinking that the chips are not deep fried in oil.

**AFFIRMED.**

FILED

DEC 10 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Husain v. Campbell Soup Company*, 24-6041

MENDOZA, Circuit Judge, dissenting:

The majority's conclusion that no reasonable consumer could be misled by the Campbell Soup Company's "Air Fried" chip packaging departs from the plausibility standard that governs at the motion-to-dismiss stage and misconstrues how reasonable consumers (rather than judges parsing labels with technical precision) interact with food claims in a typical marketplace. At the Rule 12(b)(6) stage, our task is only to determine whether a "reasonable consumer" could at least plausibly conclude what the front of this packaging obviously intends to communicate: that the chips are *exclusively* "Air Fried." The complaint alleges exactly that, and the labeling readily supports it. I therefore respectfully dissent.

In stand-alone font and sizing, the front panel prominently states "Air Fried," a phrase widely used in consumer marketing to signify an exclusive and healthier frying method. Beneath the dominating "Air Fried" label is much smaller "Kettle Cooked Air Finished" language. The majority relies heavily on this secondary phrasing to find ambiguity on the front of the package, which under our governing caselaw allows us to then consider the contents of the back of the packaging. However, to a reasonable consumer, the package's "Kettle Cooked Air Finished" statement does not dispel the plain impression that the chips are *exclusively* fried by air, rather than *also* deep fried in vats of oil. At best, "kettle cooked" functions as a vague descriptor of texture or artisanal batch cooking, not as a qualifying statement as to the *frying* method (i.e. that the chips are in fact also deep fried in vats of oil). Consumers purchasing bags of chips at a store are not required to understand formalized industry jargon or technical food-processing methods.[1] The suggestion

---

[1] In fact, Campbell Soup's counsel at oral argument readily conceded that the term "kettle cooked" is an "industry" term of art. Any person with access to the internet

that a reasonable consumer would read "kettle cooked" as ambiguously qualifying the clearly-implied *sole* method of frying, rather than *plausibly* indicating parboiling, steaming, or other alternative chip-cooking methods, is inconsistent with the way we evaluate labels at the motion-to-dismiss stage and contrary to how the everyday grocery store shopper views packaging.

Also present on the front of the package is a "30% Less Fat" callout. The majority relies on this small label to find ambiguity on the basis that a consumer would simply understand that *any* presence of fat suggests deep frying. The majority is simply incorrect. In fact, the "30% Less Fat" statement operates *in tandem* with the dominating "Air Fried" label to *further* mislead a reasonable consumer: the 30% Less Fat label suggests to a reasonable consumer that the chips are exclusively air fried by giving the impression that the chips contain less fat *because* they are exclusively "Air Fried." The majority contends that a reasonable consumer simply must know and conclude that the presence of *any fat or oil* necessarily means that the chips are also deep fried. But, again, the majority is simply incorrect. Air frying does not suggest the use of *no* oil or fat, but a *lesser* use of oil that is placed on the chips so that they fry via circulating hot air. By misconstruing the utility of the 30% Less Fat label in misleading a reasonable consumer, the majority also misconstrues Husain's complaint, which focuses on whether the packaging communicates that the chips are deep fried, *not* whether the chips have *any* oil or fat.

In sum, the ordinary, reasonable consumer glancing at these bags of chips receives a clear and unified impression that the product is made through an *exclusive* air-frying method that results in reduced fat content relative to traditionally deep-fried chips. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir.

---

can also review the countless blogs, forums, and websites that are devoted to explaining (and debating) the exact meaning of "kettle cooked."

2023) (noting that a product is misleading if the front of the packaging is plausibly deceptive). When a manufacturer chooses to intentionally place a prominent, dominating health-coded claim like "Air Fried" alongside a smaller, quantified fat-reduction claim, a consumer is plausibly entitled to take those messages at face value without searching for other obscure and technical qualifiers that hold vague and unqualifying meanings. And to a reasonable consumer shopping for a low-cost bag of chips, the smaller "kettle cooked air finished" language simply does not dispel the clear impression that the chips are exclusively air fried. Our caselaw does not require that the regular consumer go on a search expedition to ascertain whether the "Air Fried" exclusively blazoned across the front of a package actually means what it suggests. And under our governing caselaw, a front-label message that reasonably communicates an *exclusive* frying method, when in fact there are *multiple* frying methods present, is plausibly misleading on its face. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.").

Even if I viewed the front label as ambiguous, I believe that the back panel does not eliminate any such ambiguity. In fact, it adds to it.[2] In small font on the back of the package, the manufacturer states: "We batch cook them in kettles, then air fry them for a light and crispy crunch," accompanied by an illustrated kettle emitting tiny liquid-like graphics and an ingredient list mentioning oil. But none of this language unambiguously discloses a deep-frying process. The phrase "batch cook them in kettles" is *itself* ambiguous, as kettles can be used for steaming, boiling,

---

[2] The back of the packaging further gives the impression that the chips are *exclusively* air fried (even if ambiguously "cooked" beforehand) by referring to the product as "Air Fried Chips" in capital lettering, with no equally clear and prominent "deep fried" disclosure.

par-cooking, or a variety of non-frying processes – all of which are indeed methods of making potato chips. The packaging suggests to the consumer that the process of frying is exclusively via air while not equally disclosing in any clear way that the chips are also deep fried. In any case, I do not believe that a reasonable consumer looking at these packages concludes that "batch cook[ing] them in kettles" obviously means deep frying in large vats of oil. Moreover, the miniscule back-of-package graphic does not indisputably depict oil or deep-frying equipment; rather, its ambiguous nature provides no definitive notice that the chips are deep *fried* in *oil*. And while the tiny ingredient list references the use of oil, the majority's reliance on this disclosure fails for precisely the same reason as the "30% Less Fat" label: air frying frequently uses a *minimal* amount of oil, rather than no oil at all. And even if the ingredients list somehow did resolve any arguable ambiguity, our cases simply do not require consumers to cross-check back-panel ingredients to interpret or qualify a health-coded front-panel misrepresentation. *Williams*, 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Indeed, these back-panel details illustrate precisely *why* the complaint is at least plausible at the motion-to-dismiss stage: a reasonable consumer encountering them only after forming a front-panel impression would observe information that is far too vague to override the reasonable belief that the chips are exclusively fried via an air method, with a lesser amount of oil used than deep frying. At the pleading stage, and under the "reasonable consumer" standard, such conflicts must be resolved in favor of the plaintiff, not the manufacturer.

 I must also note the concerning implications of the majority's approach. By allowing manufacturers to rely on industry jargon or vague qualifiers to gloss over a clearly suggested message, we risk enabling precisely the kind of consumer

deception that California's deceptive practices statutes intend to prevent. Indeed, looking at the Campbell Soup's packaging in this case, that appears to be exactly their goal. The packaging does not merely "allow" such confusion—it appears deliberately engineered to foreground a health-coded exclusive frying message while burying the true deep-frying process behind jargon and technical phrasing that only a judge or label-lawyer would ever bother to parse. If a bold and dominating "Air Fried" label can be insulated by such equivocal, unqualifying, industry-oriented language or by exacting assumptions about consumer knowledge of production jargon, large food companies will only be further empowered to deploy misleading claims suggesting exclusive, healthier preparation methods while quietly maintaining less healthy practices. Our consumer-protection framework does not permit manufacturers to secure the marketing benefits of misleading health-focused labels while relegating the truth to ambiguous and technical disclosures hidden elsewhere on the packaging.

 Because the complaint at least plausibly alleges that a reasonable consumer could understand this package to mean that the chips are exclusively air fried, and because the back label does not clearly dispel that impression even assuming ambiguity, dismissal is improper. And because the majority's framework leaves the reasonable consumer test fried beyond palatability, I respectfully dissent.





# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate electronic filing system or, if you are a pro se litigant or an attorney with an exemption from the electronic filing requirement, file one original motion on paper.

**Petition for Panel Rehearing and Petition for Rehearing En Banc (Fed. R. App. P. 40; 9th Cir. R. 40-1 to 40-4)**

**(1) Purpose**
  **A. Panel Rehearing:**
  - A party should seek panel rehearing only if one or more of the following grounds exist:
    ➢ A material point of fact or law was overlooked in the decision;
    ➢ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
    ➢ An apparent conflict with another decision of the Court was not addressed in the opinion.
  - Do not file a petition for panel rehearing merely to reargue the case.

  **B. Rehearing En Banc**
  - A party should seek en banc rehearing only if one or more of the following grounds exist:
    ➢ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
    ➢ The proceeding involves a question of exceptional importance; or

> ➢ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**
- A petition for rehearing or rehearing en banc must be filed within 14 days after entry of judgment. Fed. R. App. P. 40(d).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(d). The deadlines for seeking reconsideration of a non-dispositive order are set forth in 9th Cir. R. 27-10(a)(2).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- See Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-4.

**(3) Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

2

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- Attorneys must file the petition electronically via the appellate electronic filing system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-8000.

**Petition for a Writ of Certiorari**
- The petition must be filed with the Supreme Court, not this Court. Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov.

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ➢ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista, maria.b.evangelista@tr.com);
  - ➢ **and** electronically file a copy of the letter via the appellate electronic filing system by using the Correspondence filing category, or if you are an attorney exempted from electronic filing, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

Name of party/parties requesting costs to be taxed:


I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                                                                 **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| **COST TAXABLE** | **REQUESTED** *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee/Appeal from District Court filing portion of fee ($5) | | | | $ |
| | | | **TOTAL:** | $ |

***Example:*** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:
No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);
TOTAL: 4 x 500 x $.10 = $200.